## Sumner et al. v. Hall et al.

. (Decided April 19, 1938.)

CLAUDE E. SMITH and W. H. BARNES for appellants.

GEORGE S. WILSON, JR., for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE STITES—
Reversing.

This is an appeal from a judgment of the Daviess circuit court sitting in equity. J. E. Sumner, father of the appellant George E. Sumner, died testate on August 26, 1926. He was survived by four grown children and the appellant, who was at that time an infant about 13 or 14 years of age. Decedent left each of his grown children $1 in cash and devised all of the rest of his property to appellant, reciting:

> "My reasons for leaving the bulk of my estate to my youngest son, George F. Sumner, is because of his tender age and because I am desirous that he may have means to continue and complete his education and means to care for himself during this period of his life."

The will nominated one Harden Brown as executor and also as guardian for the infant devisee. Mr. Brown qualified as executor and guardian and took appellant to live with him and his wife, who was appellant's aunt.

The only property apparently coming into the hands of the guardian was a house and lot on Plum street, in the city of Owensboro, which was then renting at about $15 per month. Appellant's aunt, the wife of his guardian, Harden Brown, died very shortly after Mr. Brown took charge of his affairs, and Mr. Brown then was unable to maintain a home and prepared to place appellant in an orphan asylum at Louisville. Thereupon Elmer Hall, an uncle of appellant and the father of the appellee Frank Hall, agreed to succeed Brown as guardian of appellant and took charge of him and his estate. The proof is very unsatisfactory as to just what arrangement was made at this time, but the result of the transaction was that the appellees Frank Hall and Mary Hall, a young married couple, moved

into appellant's house on Plum street and took him to live with them. It is asserted by appellees, and was found by the chancellor to be a fact, that Elmer Hall, as guardian, made a contract with Frank and Mary Hall for the care of his ward and agreed to pay them the sum of $5 per week, which was to be credited by the rental on the house of $12 per month, and any deficit to be paid out of the proceeds of the sale of the house when appellant reached the age of 21. On the death of Elmer Hall, a settlement of the guardianship accounts was filed, and appellee Della Hall, the wife of Elmer, then qualified as guardian, and whatever arrangement existed with Elmer Hall was continued. It appears from appellant's own admission that he knew from the time that he was 16 or 17 years of age that he would be expected to pay for the care and maintenance he was receiving.

About the time that appellant reached his majority, he married the appellant Dorothy Sumner, and a short while thereafter made it known that he had no intention of paying Frank and Mary Hall for their services. This suit was then filed by Della Hall, as guardian, for the purpose of settling her accounts and to enforce a sale of the Plum street property in order to comply with the contract alleged to have been made with Frank and Mary Hall. Frank and Mary Hall filed an answer and cross-petition against appellants, and, upon the making up of the issues and the trial of the case, the chancellor entered a personal judgment against appellants for the full amount prayed in the cross-petition.

It is asserted for appellants that the will of J. E. Sumner did not authorize a charge against the principal of the real estate devised and that the alleged contract of the guardian, in so far as it provided for payment in excess of the income received, was void under section 2034 of the Kentucky Statutes and unenforceable under the statute of frauds. Kentucky Statutes, sec. 470. Various other defenses were asserted which, in the view that we have taken of the case, are without merit and need not be particularly discussed.

Section 2034 of the Kentucky Statutes provides:

"No disbursements shall be allowed the guardian for the support, maintenance or education of the ward beyond the income of the estate, except in the following cases, unless authorized by the deed or will under which the estate is derived:

"(1) When the ward is of such tender years or infirm health that he cannot be bound out as an apprentice, or no suitable person will take him as such.

"(2) When it is best for the ward that the principal of his personal estate shall be applied for his support, maintenance or education, and the court, upon settlement of the accounts, shall deem such application to have been judicious and properly made. But neither the ward nor his real estate shall be liable for any such disbursement."

Appellant asserts that the provision in his father's will does not amount to an authorization to encroach upon the principal of the estate devised and that the will merely recited the reason for the bequest to him without granting any right to use anything except the income from the property. We are unable to concur in this contention. It strikes us that the testator was not merely reciting a reason for the devise, but that he was likewise expressing the purpose to which the property should be devoted. It seems reasonable to assume that the testator intended or expected that the entire corpus of the property would be consumed in the maintenance and education of his son. If this were not so, and he had intended simply to devote the income from the property to the education and maintenance of appellant, it would have been natural for him to have provided that all of his children would share equally in the property when appellant reached the age of 21. If we should give the will the interpretation urged by appellant, then the recital which he asserts to be in mere explanation of the devise would be nothing more than a statement of a purpose to deal unequally with the children of the testator. Had testator such a purpose in view, he would hardly have gone to the trouble of making the explanation. We conclude, therefore, that the intention of the testator, as expressed in his will, authorized and, indeed, contemplated disbursements by the guardian in excess of the income received by the estate.

In any event, the appellant's estate would be responsible for the reasonable value of necessaries furnished him at his own instance and request, aside from any contract of the guardian, and it is not here asserted that the charge fixed in the alleged contract with the guardian exceeds the reasonable value of the goods and services furnished. Even under the statute, the guard-

ian would here be allowed for disbursements up to the full amount of the income from the estate. Under the terms of the will as construed by the chancellor and by us, section 2034 has no application to the instant situation. No effort is here made to recover a judgment against the guardian, but simply against the infant and his estate.

The chancellor evidently took the view that the appellant George E. Sumner had himself contracted to pay for the necessaries furnished, either expressly or by implication, and, as a result of this conclusion, granted a personal judgment not only against George Sumner, but also against his wife. While there is proof to the effect that George Sumner not only acquiesced in the arrangement, but also indicated an intention to pay for what he received, the pleadings are so framed as to limit the recovery to the contract asserted to have been made by the guardian. Indeed, it may be questioned whether or not the proof does not show that any agreement by George Sumner to pay for the services received was not limited to the value of the estate controlled by his guardian. We are of the opinion, therefore, that the judgment as rendered was improper in so far as it permitted a recovery over and above the amount of the value of the Plum street property. Similarly, there was no basis whatever for a judgment against Dorothy Sumner.

It was pointed out in Maddox v. Gossom, 3 Ky. Op. 509, that the measure of liability in a case of this kind is the reasonable value of the goods or services furnished to the infant by one standing in loco parentis to him credited by whatever of value in the way of goods or services was furnished by the infant. The record rather indicates that the appellant George Sumner did not perform any services of substantial value for the appellees other than to permit the use of his house, for which he has already been given credit. However, it does appear that the appellant worked, and it is asserted that on occasions he was away from home for extended visits, during which time, of course, he could not have been an expense to his foster parents. We will not undertake to set out these various claims and strike a balance. The chancellor may hear further proof on this issue if it is desired.

The judgment is reversed for proceedings consistent with this opinion.